THE HONORABLE JOHN C. COUGHENOUR

1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9
10
11
12
13
14

| | |
|---|---|
| DELACY LAMUTH, M.D.,<br><br>           Plaintiff,<br><br>   v.<br><br>HARTFORD LIFE AND ACCIDENT<br>INSURANCE COMPANY,<br><br>          Defendant. | CASE NO. C13-1832-JCC<br><br>ORDER |

15   This matter comes before the Court on the motion to dismiss filed by Defendant Hartford

16   Life and Accident Insurance Company (Dkt. No. 21) and Plaintiff Delacy Lamuth's motion for

17   partial summary judgment (Dkt. No. 28). Having thoroughly considered the parties' briefing and

18   the relevant record, the Court finds oral argument unnecessary and hereby GRANTS IN PART

19   and DENIES IN PART Defendant's motion to dismiss and GRANTS Plaintiff's motion for

20   summary judgment.

21   **I.    BACKGROUND**

22         Plaintiff Delacy Lamuth, M.D., brought this ERISA lawsuit to recover benefits due under

23   a long-term disability plan established and maintained by her former employer, Inland Imaging

24   Associates, PS ("Inland"), and to seek clarification of her rights to future benefits under the

25   same. The employee welfare benefit plan is underwritten and insured by Defendant Harford Life

26   and Accident Insurance Company ("Hartford"), which has authority to grant or deny claims

1  under the Plan. As explained herein, Hartford denied, then granted, then reversed itself and again

2  denied Dr. Lamuth's claim for benefits. After Dr. Lamuth brought this lawsuit, Hartford again

3  changed course, re-reviewed the claim, and awarded her benefits. While Dr. Lamuth is currently

4  receiving long-term disability benefits under the Plan, the parties dispute whether she may

5  continue this lawsuit and obtain a declaratory ruling as to when she first became disabled under

6  the Policy. Dr. Lamuth seeks such a ruling in order to preclude Hartford from continuing to

7  reverse its position on this issue. The Court reviews the Policy provisions and the parties'

8  relationship to date.

9         **A.**        **The Hartford Policy**

10         Under the terms of the Policy, the terms "Disabled" and "Disability" are defined in

11  relevant part as follows:

12         You are prevented from performing one or more of the Essential Duties of:

13         1) Your Occupation during the Elimination Period; and

14
15         2) Your Occupation following the Elimination Period, and as a result Your Current
       Monthly Earnings are less than 80% of Your Indexed Pre-disability Earnings.

16
17         If at the end of the Elimination Period, You are prevented from performing one or more
       of the Essential Duties of Your Occupation, but Your Current Monthly Earnings are 80%
       or more of Your Predisability Earnings, Your Elimination Period will be extended. . . .

18
19         Your Disability must result from: 1) accidental bodily injury; 2) sickness; 3) Mental
       Illness; 4) Substance Abuse; or 5) pregnancy.

20  (Dkt. No. 23, Ex. 1 at 25–26.) An "Essential Duty" is defined as a duty that "1) is substantial, not

21  incidental; 2) is fundamental or inherent to the occupation; and 3) cannot be reasonably omitted

22  or changed. Your ability to work the number of hours in Your regularly scheduled work week is

23  an Essential Duty." (*Id.* at 26.) The Plan contains a Pre-existing Conditions Limitation, however,

24  which precludes the payment of benefits for an individual with a qualifying Disability under

25  certain circumstances. That provision states that Hartford "will not pay any benefit . . . under The

26  Policy for any Disability that . . . is caused or contributed to by, a Pre-existing Condition, unless,

at the time You became Disabled . . . 1) You have been continuously insured under The Policy for 12 consecutive month(s)." (*Id.* at 20.)

If an individual is deemed "Disabled" under the Plan and not subject to the Pre-Existing Conditions Limitation, among others, Hartford will pay benefits. The Policy contains numerous additional requirements with which a claimant must comply for benefits payment to continue on a regular basis. The Policy requires ongoing Proof of Loss to qualify for benefits, which includes, in part: documentation of the prognosis of disability; earnings and income; evidence that the claimant is under the Regular Care of a Physician; any and all medical information; the identification of all physicians, hospitals, pharmacies; and documentation regarding Other Income Benefits. (*Id.* at 20.) The Policy also permits Hartford to require the claimant to meet and interview with its representative and to have the claimant examined by a Physician, vocational expert, functional expert, or other professional. (*Id.* at 21.) The Policy specifically provides that Hartford "may request Proof of Loss throughout Your Disability[,]" and "must receive the proof within 30 day(s) of the request." (*Id.*)

Finally, the Policy contains a Termination of Payments provision, pursuant to which benefit payments will stop on the earliest of:

> 1) the date You are no longer Disabled; 2) the date You fail to furnish Proof of Loss; 3) the date You are no longer under the Regular Care of a Physician; 4) the date You refuse Our request that You submit to an examination by a Physician or other qualified professional; 5) the date of Your death; 6) the last day benefits are payable according to the Maximum Duration of Benefits Table; 7) the date Your Current monthly Earnings exceed 80% of Your Indexed Pre-disability Earnings if You are receiving benefits for being Disabled from Your Occupation; or 8) the date no further benefits are payable under any provision in The Policy that limits benefit duration.

(*Id.* at 15–16.) Notably, the Pre-existing Conditions Limitation is not subject to the ongoing Proof of Loss provision or the Termination of Payments provision; instead, it exists as a separate exclusion under the Policy's terms.

//

1    **B.    Dr. Lamuth's Claim Under the Hartford Policy**

2         Dr. Lamuth is a radiologist. She first became a beneficiary under the Hartford Plan on

3    July 1, 2011, when she began working for Inland Imaging Associates, PS at Samaritan Hospital

4    in Moses Lake, Washington. (Dkt. No. 25-2, Ex. 1 at 48.) Before joining Inland Imaging, Dr.

5    Lamuth was diagnosed with multiple sclerosis. Her diagnosis notwithstanding, Dr. Lamuth

6    worked as the sole radiologist at Samaritan Hospital until February 14, 2013, when she ended her

7    employment due to the effects of her MS. (*Id.* at 36, 48, 68.)

8         Dr. Lamuth applied for long-term disability ("LTD") benefits under the Hartford Plan on

9    March 1, 2013. (Dkt. No. 25-1, Ex. 1. at 32.) Upon receipt of her claim, Hartford noted in its

10   files that Dr. Lamuth's "Recovery Outlook" was "Low," her "Occupational Complexity" was

11   "High," and her disability was likely "permanent" due to the fact that MS is a "progressive

12   disease." (*Id.* at 30.) Shortly thereafter, Hartford noted that Dr. Lamuth's "Date of Disability"

13   ("DOD") was February 15, 2013, the day after she ended her employment. (*Id.* at 29.) However,

14   Hartford expressed reservations as to Dr. Lamuth's Date of Disability, noting that it may be able

15   to apply an earlier DOD based on a report that Dr. Lamuth began working a "reduced schedule"

16   on June 1, 2012. (*Id.* at 30.) If Hartford could use an earlier date, the claim notes repeatedly state,

17   the Pre-existing Conditions Limitation would bar coverage. (*See id.* at 30 ("Will need to review

18   for earlier DOD and pre-ex (if earlier supported)); *id.* at 29 (noting need to "review for earlier

19   [DOD] date"); *id.* at 27 (noting that Dr. Lamuth "began working a reduced schedule 06/01/12"

20   and that the examiner "[w]ill continue to f/up for [medical records] as planned to ver[ify] that

21   [Dr. Lamuth] had R/L's [restrictions and limitations] in place per MD from this time. Claim

22   likely to be subject to pre-ex if MD provides R/L's[.]"); *accord id.* at 16, 19–23, 26.) Hartford

23   sought medical records from two treating physicians, which it received. The medical records

24   produced did not indicate any restrictions or limitations on Dr. Lamuth's employment, *see id.* at

25   66–70, though it is undisputed that Dr. Lamuth  did reduce her formal work schedule from

26   approximately 40-hours per week to 35-hours per week in June 2012.

Hartford denied Dr. Lamuth's claim for benefits on June 7, 2013. (Dkt. No. 25-1, Ex. 1 at 71–75.) The denial letter explained that Dr. Lamuth's "last day of work on a full time, full duty basis as a Radiologist was 5/31/12[,]" and that accordingly, this May 31, 2012 disability date triggered the Pre-existing Conditions Limitation because it was only eleven months after the day she became a beneficiary on July 1, 2011. (*Id.*) Dr. Lamuth filed an administrative appeal, explaining that she continued to work full time after June 1, 2012, and continued to perform all essential duties of her position. (Dkt. No. 25-2, Ex. 1 at 1–5.) She pointed out that the term "full duty," upon which Hartford relied to deny benefits, appeared nowhere in the Policy; that the Policy does not use the term "full time" to determine whether the Pre-existing Conditions Limitation applies or within the definition of "Disabled" or "Disability"; and that the Policy, as a matter of eligibility to participate, defines "Full-time" as "at least 20 hours weekly, excluding on-call hours," which Dr. Lamuth says she easily met.[1] (*Id.*) She also provided declarations from treating providers, who stated that they had not placed any restrictions or limitations on Dr. Lamuth in May 2012, and that she was fully able at that time to perform all essential duties of her position.[2] (*Id.* at 18–20.) Finally, Dr. Lamuth provided a declaration from her employer, who stated that despite a limited modification in Dr. Lamuth's formal work schedule—from 40 to 35 hours of scheduled time per week—in June 2012, she continued to perform all essential duties of her position; continued to work more than her scheduled hours, since as the only salaried radiologist, Dr. Lamuth was responsible for all radiology work regardless of scheduled hours; and that following the June 1, 2012 modification of her schedule, Dr. Lamuth's salary did not

---

[1] The Court notes that the Policy's definition of Essential Duties refers only to an individual's ability to work the number of hours in one's "*regularly scheduled work week.*" (Dkt. No. 23, Ex. 1 at 25–26) (emphasis added). Nowhere within the definitions of Disability/Disabled or Essential Duties, or within the Pre-existing Conditions Limitation, does the Policy preclude coverage for one who works less than "full duty," full time," or 40-hours per week. The only reference, as pointed out by Dr. Lamuth's counsel, is that the Policy's eligible class coverage includes "All Full-time Active Employees who are Physicians," with "Full-time" being defined as "at least 20 hours weekly, excluding on-call hours." (*See* Dkt. No. 25-2, Ex. 1 at 3.)

[2] Indeed, Dr. Wundes noted that it was not until July 25, 2012, that she completed a form for Dr. Lamuth's employer recommending that Dr. Lamuth reduce her hours somewhat, to 35 hours per week.

ORDER
PAGE - 5

1  decrease to less than 80% of her previous salary. (*Id.* at 7–8.)

2        On August 27, 2013, Hartford granted Dr. Lamuth's appeal and reversed its prior

3  decision to deny her claim. (*Id.* at 46.) Hartford's letter stated that it had completed its review of

4  the appeal and "determined that Pre-existing is not applicable at this time." (*Id.*) Three days later,

5  however, Hartford communicated to Dr. Lamuth's attorney that "it has been determined that an

6  incorrect decision has been rendered and an updated appeal review and decision will be

7  forthcoming." (*Id.* at 47.) That decision arrived on September 5, 2013. In that appeal decision,

8  Hartford denied coverage on the basis that Dr. Lamuth was considered Disabled as of June 1,

9  2012 because she was hired "as a Radiologist on a 40 hour per week basis[,]" and began working

10  a reduced schedule in June 2012, at which point she became unable to perform her essential

11  duties. "Because [Dr. Lamuth] was placed on reduced hours and was not working the number

12  that she was hired to work (40)," Hartford concluded, "it has been determined that the pre

13  existing [*sic*] exclusion is applicable." (*Id.*)

14        Dr. Lamuth advised Hartford that its September 5, 2013 decision reversing the August

15  27, 2013 benefits determination was a new claim ruling that entitled her to further administrative

16  appeal since it relied upon a new ground—that Dr. Lamuth was formally required to work 40

17  hours per week but did not. (*Id.* at 52–53.) Dr. Lamuth then reiterated her request and sent

18  Hartford a declaration from her employer, who explained that that Dr. Lamuth was not hired to

19  work a specific number of hours, contrary to Hartford's conclusion. (*Id.* at 55–57.) Hartford

20  declined to provide further review, and after additional requests by Dr. Lamuth, Hartford

21  responded on September 27, 2013 that it would provide "no further review." (*Id.* at 58–63.)

22      **C.**    **Dr. Lamuth's Lawsuit**

23        Dr. Lamuth filed suit on October 10, 2013. Her Complaint sought "to recover the long-

24  term disability benefits due her under the Plan, to enforce her rights under the Plan, and to clarify

25  her rights to future benefits under the Plan" under 29 U.S.C. § 1132(a)(1)(B). (Dkt. No. 1 at 9,

26  10.) The Complaint specifically asks the Court to "declare that Plaintiff has been disabled within

ORDER
PAGE - 6

the meaning of the Plan since February 15, 2013[.]" (*Id.*) The Complaint also pleaded a claim under 29 U.S.C. § 1133, alleging that Hartford failed to comply with ERISA when it provided changing reasons for the benefit denial and then refused to allow a further appeal. (*Id.*) Hartford appeared in this action, but did not file an Answer or provide initial disclosures. At Hartford's proposal, Dr. Lamuth agreed to a stay of this litigation so that Hartford could reconsider Dr. Lamuth's claim in light of the additional declarations provided and any new declarations provided within a certain time period. The Court entered a stipulated stay of this action on November 25, 2013. (Dkt. No. 15.)

Dr. Lamuth then provided Hartford with one additional declaration from her employer and one from the Chief Medical Officer of Samaritan Hospital. Both affirmed that Dr. Lamuth was the only radiologist at Samaritan Hospital; that she was necessarily required to, and did, perform all essential duties of her position until her employment ended in February 2013; and that had Dr. Lamuth not been able to perform all essential functions of her job, the Hospital would have had to hire an additional radiologist. (*Id.* at 64–69.) Hartford wrote on December 23, 2013 that it had received Dr. Lamuth's materials and would, consistent with ERISA's claims-management regulations, provide a decision within forty-five days. (*Id.* at 70.) Hartford subsequently delayed its appeal decision and requested answers to seventeen detailed questions and made numerous requests for documents. (*Id.* at 72–74.) Dr. Lamuth's counsel declined to provide the requested answers or documents, reasoning that such a request was an improper attempt to conduct unauthorized civil discovery; instead, Hartford was informed that Dr. Lamuth wished the appeal decision to be made on the existing record, as Hartford instructed it would do if the requested information was not provided. (*Id.* at 75–76.)

Hartford granted Dr. Lamuth's claim five days later. (*Id.* at 77.) Hartford explained that Dr. Lamuth "is eligible for LTD benefits under the terms of The Policy[,]" but also stated: "However, Dr. Lamuth's LTD claim moving forward will be considered based on the merits." (*Id.*) An internal Hartford note stated that because Dr. Lamuth had not submitted the additional

1    documents and information sought, "an appeal decision is being rendered this date based on the

2    records as it stands at present." (Dkt. No. 25-1, Ex. 1 at 8.) That same note contained an

3    assessment in which the Appeal Specialist concluded that "[t]he Pre-existing Conditions

4    Limitation does not apply in this case as the proper Date of Disability is 2/15/2013"

5    notwithstanding Dr. Lamuth's "slightly" reduced work schedule in June 2012. (*Id.*) Thereafter,

6    Hartford informed Dr. Lamuth on March 5, 2014 that it had approved her claim and made a

7    payment through February 28, 2014. (Dkt. No. 25-2, Ex. 1 at 78–79.) That letter states that

8    "[b]enefit payments will continue, subject to the terms and limitations of the policy, while [Dr.

9    Lamuth] meets the policy definition of Disability." (*Id.*) As Hartford points out, this language

10   informed Dr. Lamuth of her obligation under the Policy to provide continuing Proof of Loss.

11          While Dr. Lamuth has been granted benefits and placed "on claim"—meaning that she

12   will continue to receive benefits so long as she continues to remain eligible under the Policy—

13   the parties reached an impasse with regard to the dismissal of this lawsuit. Dr. Lamuth remains

14   concerned that Hartford will attempt to revisit the "Date of Disability" and Pre-existing

15   Conditions Limitation issue in the future given the language used in its appeal decision and

16   Hartford's refusal to agree to any stipulated dismissal that specifies the Date of Disability as

17   February 15, 2014. (*See* Dkt. No. 24 at 8.) Hartford asserts that because it has granted benefits

18   and "put [Dr. Lamuth] on claim," the parties have "fully resolved the legal dispute between the

19   parties" and this lawsuit is no longer necessary. (Dkt. No. 21 at 9.) Hartford further contends that

20   Dr. Lamuth's request for a "clarification" of her rights with regard to the Date of Disability and

21   Pre-existing Conditions Limitation is an improper attempt to obtain a Court-ordered entitlement

22   to future benefits in derogation of the Policy provisions relating to ongoing Proof of Loss.

23          After Hartford filed its motion to dismiss and briefing was completed, Dr. Lamuth moved

24   for partial summary judgment as to her request for a "clarification of rights" under 29 U.S.C. §

25   1132(a)(1)(B). (Dkt. No. 28.) Dr. Lamuth's motion relies on Hartford's numerous statements in

26   its earlier briefing that it has adopted the February 15, 2013 date as Dr. Lamuth's Date of

1    Disability. (*Id.* at 1–2.) Hartford opposes Dr. Lamuth's motion for summary judgment on largely

2    the same grounds raised in its motion to dismiss, namely, that the Court lacks subject matter

3    jurisdiction to consider this lawsuit. (Dkt. No. 30.) For the reasons that follow, the Court finds

4    that Dr. Lamuth's claim for payment of benefits is moot, but her claim for a clarification of

5    rights regarding the Pre-existing Condition Limitation and her Date of Disability is not.

6    Accordingly, the Court denies Hartford's motion to dismiss insofar as it seeks complete

7    dismissal of this lawsuit and grants Dr. Lamuth's motion for partial summary judgment in light

8    of Hartford's numerous admissions as to Dr. Lamuth's Date of Disability.

9    **II.    DISCUSSION**

10          **A.    Defendant's Motion to Dismiss**

11                **1.    Legal Standard**

12          Under Federal Rule of Civil Procedure 12(b)(1), the Court must dismiss claims over

13    which it lacks subject matter jurisdiction. *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939,

14    954 (9th Cir. 2011). The party asserting jurisdiction bears the burden of proving that the Court

15    has subject matter jurisdiction over the asserted claims. *Kokkonen v. Guardian Life Ins. Co. of*

16    *America*, 511 U.S. 375, 377 (1994). When determining the existence of subject matter

17    jurisdiction, "the district court is not confined by the facts contained in the four corners of the

18    complaint—it may consider [other] facts and need not assume the truthfulness of the complaint."

19    *Americopters, LLC v. F.A.A.*, 441 F.3d 726, 732 n.4 (9th Cir. 2006).

20          Here, Hartford argues that the Court lacks subject matter jurisdiction over Dr. Lamuth's

21    Complaint because (i) her claims are moot; (ii) her claim for declaratory relief is not ripe; (iii)

22    her claims are insufficiently pled to demonstrate a justiciable case or controversy; and (iv) Dr.

23    Lamuth has failed to exhaust her administrative remedies for her declaratory relief claim.

24    Hartford also argues that the Court should exercise its discretion to dismiss Dr. Lamuth's claims

25    under the doctrine of "prudential unripeness." (Dkt. No. 21 at 20.) Dr. Lamuth counters that

26    Hartford's analysis ignores the fact that ERISA provides for the precise relief sought here—a

1   clarification of her rights to future benefits—and otherwise depends on Hartford's

2   mischaracterization of Dr. Lamuth's requested relief. (Dkt. No. 24 at 2.) The Court addresses the

3   parties' arguments in turn.

4                      **2.      Mootness**

5          Federal courts lack subject matter jurisdiction to consider moot claims. *Rosemere*

6   *Neighborhood Ass'n v. U.S. Environmental Protection Agency*, 581 F.3d 1169, 1172 (9th Cir.

7   2009). "A claim is moot if it has lost its character as a present, live controversy." *Id.* at 1172–73

8   (quoting *Am. Rivers v. Nat'l Marine Fisheries Serv.*, 126 F.3d 1118, 1123 (9th Cir. 1997)). The

9   mootness doctrine assures that federal courts are presented with disputes they can actually

10  resolve by affording meaningful relief to the prevailing party. *See PUC v. FERC*, 100 F.3d 1451,

11  1458 (9th Cir. 1996). If the plaintiff receives the entire relief sought in a particular action, the

12  case generally becomes moot because there is no longer anything in dispute between the parties.

13  *Id.*; *see generally Gator.com v. L.L. Bean, Inc.*, 398 F.3d 1125, 1131–32 (9th Cir. 2005). Courts

14  have long recognized a "voluntary cessation" exception to the doctrine, however, under which

15  the "mere cessation of illegal activity in response to pending litigation does not moot a case,

16  unless the party alleging mootness can show that the 'allegedly wrongful behavior could not

17  reasonably be expected to recur." *Rosemere*, 581 F.3d at 1173 (quoting *Friends of the Earth, Inc.*

18  *v. Laidlaw Envt'l. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000)). This exception is justified

19  because without it, "the courts would be compelled to leave [t]he defendant . . . free to return to

20  his old ways." *Porter v. Bowen*, 496 F.3d 1009, 1017 (9th Cir. 2007) (quotations omitted).

21         The standard for determining whether a defendant's voluntary conduct has mooted a

22  claim is stringent. A defendant asserting mootness bears the "heavy burden" of demonstrating

23  that it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected

24  to recur." *Laidlaw*, 528 U.S. at 189. Here, that party is Hartford. It argues that its decision to

25  begin paying Dr. Lamuth benefits after she commenced litigation renders all issues in the lawsuit

26  moot because she received the back-benefits and is "on claim." Dr. Lamuth argues in response

1    that while her Complaint sought payment of benefits due, she also sought a clarification of her

2    right to future benefits under ERISA. Specifically, Dr. Lamuth requests in her Complaint that the

3    Court declare her Date of Disability to be February 15, 2013; doing so, she argues, will preclude

4    Hartford from again changing its position and denying benefits based on the Pre-existing

5    Conditions Limitation.

6           Dr. Lamuth's claim for a clarification of her rights with regard to her Date of Disability is

7    not moot.[3] First, ERISA provides that a plan beneficiary may bring an action "to recover benefits

8    due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to

9    clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B); *Aetna*

10   *Health Inc. v. Davila*, 542 U.S. 200, 210 (2004) ("This provision is relatively straightforward . . .

11   A participant or beneficiary can also bring suit generically to 'enforce his rights' under the plan,

12   or to clarify any of his rights to future benefits."). To the extent Hartford repeatedly summarizes

13   Plaintiff's claims as seeking only the "payment of benefits" or argues that "all claims" in the

14   lawsuit have been resolved, Hartford is factually incorrect. Nor did Dr. Lamuth change her

15   claims and assert a clarification of rights claim only once Hartford decided to grant her benefits

16   after litigation commenced. As noted above, her Complaint specifically contained a request for

17   the relief now at issue. (*See* Dkt. No. 1 at ¶ 6.1.)

18          Second, Hartford has failed to demonstrate that it is "absolutely clear" it could not

19   reasonably be expected to reexamine Dr. Lamuth's eligibility for benefits based on her Date of

20   Disability and the Pre-existing Conditions Limitation. *See Laidlaw*, 528 U.S. at 189. While

21   Hartford states in its Reply that it "agree[s] . . . that [Dr.] Lamuth's disability start date is

22   February 15, 2013, and thus, [that] the Pre-existing Condition Limitation does not apply,"—a

23   concession the Court addresses in more detail below—it conspicuously declines to state that it

24

25

26      [3] Given that Hartford has awarded Dr. Lamuth benefits and rendered payment, the Court concludes that her
claims seeking the payment of benefits are properly dismissed as moot. There is simply no relief for the Court to
award on such a claim. Dr. Lamuth does not dispute such a conclusion in her briefing.

1   will not revisit the issue in the future and attempt to remove Dr. Lamuth from eligibility on this

2   basis. Indeed, as the record demonstrates, Hartford repeatedly denied benefits based on the Pre-

3   existing Conditions Limitation and only agreed to pay her benefits once she sued. While it is

4   currently paying benefits, it has refused to agree to Dr. Lamuth's proposed dismissal stipulations

5   that include a determination that February 15, 2013 was her Date of Disability. Nor has Hartford

6   pointed to any of its own proposed stipulations that would call for dismissal of the suit in

7   exchange for a legally binding agreement that it will not again change its position with regard to

8   Dr. Lamuth's Date of Disability. Indeed, even the letter Hartford sent to Dr. Lamuth's counsel

9   informing him of its decision to award benefits did not expressly state that Hartford will use the

10  February 15, 2013 Date of Disability going forward or otherwise promise that Hartford will not

11  again revisit the issue; it merely explained that it had determined that Dr. Lamuth "is eligible for

12  LTD benefits under the terms of The Policy" and reiterated that "Dr. Lamuth's LTD claim

13  moving forward will be considered based on the merits." (Dkt. No. 25-2, Ex. 1 at 77.) Given

14  Hartford's equivocal conduct to date, it has failed to demonstrate that it is "absolutely clear" that

15  it will not "return to its old ways," *Porter*, 496 F.3d at 1017, and again subject Dr. Lamuth to a

16  denial of benefits based on the Pre-existing Conditions Limitation if it is able to find evidence to

17  support its position.

18        This conclusion is consistent with those of other courts addressing similar "about-face"

19  changes of position prompted only by litigation and only equivocally offered in out-of-court

20  statements. *See*, *e.g.*, *Kerns v. Caterpillar, Inc.*, 499 F.Supp.2d 1005, 1023–24 (M.D. Tenn.

21  2007) (ERISA clarification of rights claim not rendered moot by defendant's post-lawsuit

22  reversal in position and promise not to change position); *Engelhardt v. Paul Revere Life*

23  *Insurance Company*, 77 F.Supp.2d 1226, 1235 (M.D. Ala. 1999) (post-lawsuit reconsideration of

24  benefits denial contained in a letter to claimant insufficient to preclude a legal ruling as to

25  benefits entitlement, since only a legal ruling clarifying Plaintiff's rights to benefits under the

26  policy would wholly eliminate the possibility of any recurring violation); *Valliere v. Teamsters*

1  *Local No. 264*, No. C08-624, 2009 WL 2595663, *3 (W.D.N.Y. Aug. 20, 2009) (refusing to

2  dismiss "clarification of rights" claim as moot where plan promised in a post-lawsuit letter not to

3  change its position).

4         To the extent Hartford relies upon *Silk v. Metropolitan Life Ins. Co.*, and the few cases

5  that rely upon it, for the proposition that its post-lawsuit payment of benefits moots Dr. Lamuth's

6  claim for a clarification of her right to future benefits, the Court is not persuaded. No. 07-55369,

7  310 Fed. App'x 138 (9th Cir. Jan. 23, 2009) (unpublished). *Silk* did not involve a situation in

8  which a plaintiff sued for the payment of benefits and a clarification of rights as to future

9  benefits, only to have the claim for payment rendered moot by the insurance company's post-

10 lawsuit decision to change course while still leaving some question as to whether it would revisit

11 a crucial eligibility issue. Instead, the claimant there sought payment of both "any occupation"

12 and "own occupation" benefits under the policy. *Id.* at 139. After the lawsuit was filed, the

13 insurance company paid plaintiff for his "own occupation" benefits claim and agreed to

14 administratively consider, for the first time, his "any occupation" claim. The district court

15 accordingly dismissed the "own occupation" benefits claim as moot because the benefits had

16 been paid, and dismissed the "any occupation" claim as premature because the insurance

17 company had not yet had a chance to administratively review the claim. On appeal, the Ninth

18 Circuit agreed that the payment of "own occupation" benefits mooted the claim for payment of

19 those benefits, and it declined to decide the exhaustion question because the insurance company

20 was in the process of reviewing the "any occupation" benefits claim. The Ninth Circuit noted

21 that the "any occupation" claim may also have been mooted if the insurance company decided to

22 pay those benefits, and if they did not, the plaintiff could file another lawsuit. *Id.* at *139–40. As

23 that district court and Ninth Circuit orders made clear, the claimant there brought only claims for

24 payment of benefits—like the one by Dr. Lamuth that this Court has declined to consider as

25 moot—but did not bring a "clarification of rights" claim seeking a resolution on an issue that had

26 been exhausted and repeatedly subject to dispute. *See id.*; *Silk c. Metropolitan Life Ins. Co.*, 477

ORDER
PAGE - 13

1   F.Supp.2d 1088 (C.D. Cal. 2007).

2          The additional cases upon which Hartford relies are similarly inapposite. The claimant in

3   *Pakovich v. Verizon LTD Plan*, 653 F.3d 488 (7th Cir. 2011) did not request a clarification of

4   rights under § 1132(a)(1)(B), and the Seventh Circuit did not discuss whether such a claim is

5   mooted when a plan decides to pay benefits after litigation is commenced. Instead, the court

6   rightfully held that because the plan paid the plaintiff the benefits sought in her benefits payment

7   claim, *that claim* became moot because she received "everything she requested." *Id.* at 492. As

8   detailed herein, Dr. Lamuth has not received everything she requested—namely, an Order

9   declaring her Date of Disability to be February 15, 2013. The remaining cases cited by Hartford

10  fail for the same basic reason, as they stand only for the unexceptional proposition that

11  "reinstatement of an individual's benefits moots an ERISA claim seeking *those benefits*."

12  *Zacharkiw v. Prudential Ins. Co. of Am.*, No. C10-0639, 2012 WL 39870, at *4 (E.D. Pa. Jan. 6,

13  2012) (emphasis added) (plaintiff not seeking a clarification of rights declaration); *see Lemons v.*

14  *Reliance Std. Life Ins. Co.*, No 12-4001, 534 Fed. App'x 162 (3rd Cir. Aug. 8, 2013) (claim that

15  benefits were arbitrarily terminated rendered moot when benefits were reinstated after lawsuit

16  was filed); *Tannenbaum v. Unum Life Ins. Co. of Am.*, No. C03-1410, 2010 WL 2649875 (E.D.

17  Pa. June 30, 2010) (claim for payment of benefits moot where insurance company reversed

18  decision, paid benefits, placed plaintiff "on claim for future payment without any reservation of

19  rights[,]" and any remaining claim for "additional relief" dismissed because plaintiff conceded

20  that he did not seek any further relief or legal rulings).

21          Accordingly, Dr. Lamuth's claim for a clarification of her right to future benefits,

22  namely, her request that the Court declare that she first became Disabled within the meaning of

23  the Policy on February 15, 2013, is not moot in light of Hartford's payment of benefits. Dr.

24  Lamuth's remaining claims, however, are moot to the extent she sought payment of benefits.

25  //

26  //

1        **3.        Ripeness and Justiciability**

2        Hartford also argues that Dr. Lamuth's "clarification of rights" claim is not ripe for this

3    Court's decision and does not present a justiciable controversy because, Hartford believes, Dr.

4    Lamuth really seeks an improper "advisory opinion" as to hypothetical future benefits. Hartford

5    offers numerous overlapping reasons why Dr. Lamuth's claim is not ripe and is otherwise

6    improper. The Court addresses each in turn, but notes from the outset that Hartford's entire

7    argument is premised upon its inaccurate characterization of the relief that Dr. Lamuth seeks.

8    Hartford repeatedly states that Dr. Lamuth seeks an advisory opinion that she is entitled to future

9    benefits for the duration of her policy; that she seeks to "eviscerate Hartford's obligation and

10   rights . . . to evaluate her claim on an ongoing basis with new evidence that comes to light"; and

11   that she is "jumping the gun" in seeking the Court's commitment regarding Hartford's payment

12   of any claim for future benefits. (*See* Dkt. No. 21 at 17–18.) Dr. Lamuth's Complaint, however,

13   does not seek a declaration that she is forever entitled to benefits, and her subsequent briefing

14   makes clear what the Complaint already stated, namely, that she seeks a declaration as to when

15   she was first disabled within the Policy's meaning so as to avoid further conflict with regard to

16   the Pre-existing Conditions Limitation. Despite Hartford's characterizations, Dr. Lamuth

17   nowhere requests an actual award of future benefits or a ruling that she need not comply with the

18   ongoing Proof of Loss requirements.

19       Based on this mischaracterization, Hartford first argues that Dr. Lamuth's request is

20   "premature" because she seeks to control her future benefits and "[t]here has been no denial" or

21   "final adverse benefit determination upon which [Dr. Lamuth] may now sue." (*Id.* at 17.) But

22   Hartford's argument is wrong on multiple accounts. First, as explained above, Dr. Lamuth does

23   not seek to "control her future benefits," but seeks a ruling as to her Date of Disability so she will

24   not be forced to endure additional reversals of position on the Pre-existing Conditions Limitation

25   by Hartford under the guise of "continuing eligibility" evaluations. (*See* Dkt. No. 1 at ¶ 6.1.) In

26   each of the cases offered to support Hartford's argument—cases in which lawsuits were

dismissed because they presented claims that were not ripe—the claimants sought awards of future benefits or declarations that they were "forever entitled" to benefits. *See Nordby v. Unum Provident Ins. Co.*, No. C06-0117, 2009 WL 426123 (E.D. Wash. Feb. 20, 2009) (concluding that plaintiff was not entitled to receive future benefits in advance because an award of benefits not yet accrued violated ERISA's purely compensatory remedial scheme) (quotation omitted); *Wade v. Life Ins. Co. of N. Am.*, 245 F.Supp.2d 182, 186 (D. Maine 2003) (plaintiff sought to recover the present value of all future benefits); *Stenson v. Jefferson Pilot Fin. Ins. Co.*, No. C06-2721, 2008 WL 2413743 (E.D. Ca. June 12, 2008) (plaintiff sought declaratory judgment that he was "entitled to lifetime LTD benefits"). By her own pleadings, admissions, and briefing, that is not what Dr. Lamuth requests in this lawsuit, and cases addressing such requests for relief are of no use to the Court in deciding this matter.

　　　Second, to the extent Hartford asserts that there has been no final adverse benefit determination sufficient to support this lawsuit, it is again incorrect. While Hartford reversed course after being sued and decided to award benefits, Dr. Lamuth has repeatedly attempted to resolve the Date of Disability issue through Hartford's administrative appeal process, and despite the changed position post-lawsuit, the parties still remain unable to agree to dismissal of the lawsuit over the Date of Disability issue. Just as Hartford cannot moot Dr. Lamuth's claim by changing positions after her Complaint was filed, it similarly cannot avoid the clarification ruling Dr. Lamuth seeks by pointing to a lack of an adverse determination or a failure to exhaust after it has repeatedly had the opportunity to decide the issue but refused to provide any legally binding agreement on the matter.

　　　In the same vein, Hartford argues that "Dr. Lamuth must continue to satisfy the Policy's requirement for continuing proof of loss." (Dkt. No. 21 at 18.) Its concern that Dr. Lamuth seeks to avoid this obligation appears to drive Hartford's entire effort to have this lawsuit dismissed. But Dr. Lamuth has nowhere asserted that she seeks to be exempt from those obligations. Nor has Dr. Lamuth ever asserted that she should necessarily, and without further review under the

Policy's provisions, be entitled to benefits for the duration of the Policy period. To the extent Hartford harbors such a concern, it is misplaced. *Cf. Engelhardt*, 77 F.Supp.2d at 1235 ("Contrary to [the insurance company]'s assertion, Plaintiff is not seeking an unconditional clarification from the court that Plaintiff is now and forever more entitled to benefits under the Policy. In fact, Plaintiff agrees . . . that future coverage is not automatic but rather is contingent upon Plaintiff qualifying for coverage under the terms of the policy."). Hartford's unfounded assertion does not render premature Dr. Lamuth's desire to clarify her Date of Disability and preclude Hartford from indefinitely attempting to seek out evidence and/or ways to revive its Pre-existing Conditions Limitation bar to coverage. Further, the first "Date of Disability" and applicability of the Pre-existing Conditions Limitation are not included in the Proof of Loss or Termination of Payments provisions of the Policy. Thus, there should be no occasion for Hartford to revisit the issue under the Policy going forward, and the Court can appropriately resolve the dispute fully and finally in an efficient manner herein.

Nor will the Court undermine Hartford's administrative role by addressing the Date of Disability issue without giving it a chance to do so yet again. (*See* Dkt. No. 21 at 19–20.) Hartford had multiple opportunities to resolve this issue, and chose to do so only after Dr. Lamuth came to this Court. And while Hartford agreed to pay benefits, Dr. Lamuth maintains (as explained above) a legitimate concern that Hartford will again attempt to preclude coverage based on its belief that the Pre-existing Conditions Limitation bars coverage given its equivocal conduct to date.

Finally, the Court rejects Hartford's argument that "[t]here is no justiciable controversy in this case warranting declaratory relief."[4] (Dkt. No. 21.) This argument relies on Hartford's

---

[4] While its briefing is unclear, Hartford appears to raise its argument as to the "lack of a justiciable controversy" under Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 21 at 22.) But determining whether there exists a controversy sufficient to establish Article III's justiciability requirements is an inquiry properly conducted under Rule 12(b)(1). *Rhoades v. Avon Products, Inc.*, 504 F.3d 1151, 1157 (9th Cir. 2007).

1   repeat arguments that Dr. Lamuth seeks a broad declaration and "advisory opinion" that she is

2   forever entitled to benefits. But as already explained herein, ERISA expressly authorizes Dr.

3   Lamuth to seek a clarification of her right to future benefits, and the parties have been unable to

4   resolve a particular threshold dispute as to Dr. Lamuth's Date of Disability and the applicability

5   of the Pre-existing Conditions Limitation. Because this disagreement has not been "nebulous or

6   contingent," but has taken on a "fixed and final shape so that the court can see what legal issues

7   it is deciding, what effects its decision will have on the adversaries, and some useful purposes to

8   be achieved in deciding them[,]" the Court has no trouble concluding that there exists a

9   substantial controversy between with the parties of sufficient immediacy and reality to warrant

10  issuance of a declaratory judgment. *See Rhoades v. Avon Products, Inc.*, 504 F.3d 1151, 1157

11  (9th Cir. 2007). The Court is deciding the single, particular issue of Dr. Lamuth's Date of

12  Disability and the applicability of the Pre-existing Conditions Limitation; its decision will

13  preclude Hartford from again revisiting the issue and terminating Dr. Lamuth's benefits on an

14  improper basis (rather than on a basis that it may address in the future, such as a ruling under the

15  Proof of Loss provision as to whether Dr. Lamuth still meets the definition of Disabled at a

16  future point in time); and such a ruling serves the useful purpose of clarifying Dr. Lamuth's right

17  to benefits so long as she meets the Policy's terms and provisions going forward.

18          In sum, Hartford has offered no factually or legally sound basis for the Court to dismiss

19  Dr. Lamuth's clarification of rights claim as unripe or as a non-justiciable controversy.[5] Having

20  determined that this claim is appropriate for consideration, the Court next addresses Dr.

21  Lamuth's motion for partial summary judgment.

22  _____

23          [5] Hartford also stated that the Court should dismiss Dr. Lamuth's claim under the doctrine of "prudential
    unripeness" even if her claims are ripe under Article III standards. The Court determines the "fitness of the issue for

24  judicial decision and the hardship of the parties of withholding court consideration" in determining whether it should
    decline to consider a claim as unripe. *California ex. rel Lockyer v. U.S. Dep't of Agric.*, 575 F.3d 999, 1011 (9th Cir.

25  2009). For the reasons explained above, the Court will not dismiss this lawsuit on "prudential unripeness" grounds.
    The Date of Disability issue is fit for decision because it involves facts that occurred wholly in the past and Dr.

26  Lamuth should not be subjected to unnecessary, ongoing efforts by Hartford to fit her claim into the Pre-existing
    Conditions Limitation.

ORDER
PAGE - 18

1    **B.    Dr. Lamuth's Motion for Summary Judgment**

2        Pursuant to Rule 56 of the Federal Rules of Civil Procedure, "[t]he court shall grant

3    summary judgment if the movant shows that there is no genuine dispute as to any material fact

4    and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). In making such

5    a determination, the Court must view the facts and inferences to be drawn therefrom in the light

6    most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–50

7    (1986). Once a motion for summary judgment is properly made and supported, the opposing

8    party "must come forward with specific facts showing that there is a genuine issue for trial."

9    *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Material facts are

10   those that may affect the outcome of the case, and a dispute about a material fact is genuine if

11   there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party.

12   *Anderson*, 477 U.S. at 248–49. Ultimately, summary judgment is appropriate only against a party

13   who "fails to make a showing sufficient to establish the existence of an element essential to that

14   party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v.*

15   *Catrett*, 477 U.S. 317, 324 (1986).

16       Here, Dr. Lamuth seeks a declaration from the Court that she first became "Disabled"

17   within the meaning of Hartford Policy on February 15, 2013, so that Hartford may not determine

18   in the future that the Policy's Pre-existing Conditions Limitation bars coverage. (Dkt. No. 28.)

19   Dr. Lamuth asserts that in light of Hartford's admission that her Date of Disability is February

20   15, 2013, and that the Pre-existing Condition Limitation is not applicable, there exists no

21   disputed issue of fact that would necessitate a trial for this claim. Hartford opposes Dr. Lamuth's

22   summary judgment motion on largely the same grounds contained in its motion to dismiss,

23   namely, that the Court lacks subject matter jurisdiction to consider this lawsuit; that there exists

24   no justiciable controversy to support a declaratory judgment lawsuit; that Dr. Lamuth's claim is

25   one for a "broad declaration" that she has been disabled, which it calls a "backdoor attempt to

26   secure a continued right to future benefits based on a court order"; that the Court cannot rule on

1   the motion because doing so would require it to "rule on the merits"; and because Hartford is not

2   the "Administrator" for the Plan. (*See* Dkt. No. 30 at 2–3.) For the reasons that follow, none of

3   Hartford's arguments are persuasive.[6]

4          To the extent Hartford argues that this Court may not grant summary judgment because it

5   must instead "adjudicate her disability claim on the merits," Hartford misunderstands Dr.

6   Lamuth's motion and the purpose of the summary judgment device under the Federal Rules of

7   Civil Procedure. It provides no authority for the proposition that Courts cannot address ERISA

8   disputes on summary judgment. Instead, it argues only that the Court cannot do so because there

9   has been no adverse disability determination and because Dr. Lamuth "presented no evidence in

10  her Motion to support her requested declaratory judgment that she became disabled on February

11  15, 2013." (Dkt. No. 30 at 14.) The Court has addressed the former assertion above, and rejects

12  Hartford's attempt to avoid summary judgment by asserting that a full trial on the merits is

13  required while simultaneously ignoring the concessions it made in an attempt to demonstrate the

14  lack of any controversy sufficient to warrant this Court's exercise of jurisdiction.

15         In the Ninth Circuit, statements in briefs may be considered admissions for purposes of

16  summary judgment. *Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988).

17  Here, Hartford repeatedly conceded in its prior briefing that "[Dr.] Lamuth's disability start date

18  is February 15, 2013[,]" and that "the Pre-Existing Condition Limitation does not apply." It

19  further explained that the "only earlier 'disability date' that ever existed – June 1, 2012 – has

20  been put to rest with the Pre-Existing Condition Exclusion." Elsewhere, Hartford conceded that

21  it has "adopted the February 15, 2013 disability date[.]" (Dkt. No. 26 at 1, 4.) The Court believes

22  that this is precisely the type of situation in which party admissions made in a brief are properly

23  considered as support for a summary judgment motion. Hartford's admissions were deliberate,

24  clear, and intentionally made in order to demonstrate the lack of any justiciable dispute over the

25

26

---

[6] Hartford's first three contentions are merely repeat arguments already addressed herein.

ORDER
PAGE - 20

1  Date of Disability issue (and to avoid a Court order declaring as much). Because it argued

2  specifically that February 15, 2013 *is* the date on which Dr. Lamuth first became disabled within

3  the meaning of the Policy and conceded that the Pre-existing Conditions Limitation does not

4  apply, Hartford cannot now reverse course and point to a lack of evidence demonstrating when

5  Dr. Lamuth first became disabled. To allow it to do so would be to allow Hartford to continue its

6  gamesmanship and to manipulate the judicial system.

7         Insofar as Hartford harbors concern that Dr. Lamuth is obtaining more than a declaration

8  as to when she first became disabled under the Policy—for example, a ruling that she need not

9  continue to meet the definition of Disabled on an ongoing basis under the Policy's Proof of Loss

10  provision—the Court dispels that notion by adopting Dr. Lamuth's own representations in her

11  Reply brief. "While a determination of [Dr. Lamuth's Date of Disability] affects her rights to

12  future benefits, it does not secure her right to such benefits." (Dkt. No. 31 at 5.) Going forward,

13  Dr. Lamuth must still comply with the Policy's Proof of Loss and Termination of Payments

14  provisions, and this Order should not be read to mean that Dr. Lamuth will necessarily meet the

15  definition of "Disabled" or "Disability" indefinitely. Instead, the Court grants the limited relief

16  requested by Dr. Lamuth: It declares that Dr. Lamuth first became disabled within the meaning

17  of the Policy on February 15, 2013. Her right to benefits may not be precluded on the basis that

18  the Policy's Pre-existing Conditions Limitation applies based on an earlier Date of Disability.

19  **III.   <u>CONCLUSION</u>**

20         For the foregoing reasons, Defendant's motion to dismiss (Dkt. No. 21) is GRANTED IN

21  PART and DENIED IN PART. Plaintiff's motion for partial summary judgment is GRANTED.

22  (Dkt. No. 28.) The Court accordingly DECLARES that Plaintiff Delacy Lamuth, M.D., a

23  beneficiary of a long-term disability claim administered by Defendant Hartford Life and

24  Accident Insurance Company, first became disabled within the meaning of the Group Long Term

25  Disability, Basic Term Life, Basic Accidental Death and Dismemberment Plan for Employees of

26  Inland Imaging Associates, P.S., on February 15, 2013.

1    DATED this 9th day of July 2014.

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

John C. Coughenour
UNITED STATES DISTRICT JUDGE

ORDER
PAGE - 22